IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RONALD E. RAYMOND,

      Plaintiff,

v.                                                                    CIV 08-0515 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

# MEMORANDUM OPINION AND ORDER

The details about Plaintiff Ronald Raymond's prior work and applications are not entirely clear, but it appears he worked principally as an upholstery laborer and chef, and unsuccessfully applied for Social Security disability benefits during periods when he was not working.  *See Administrative Record* ("*Record*") at 67, 92, 98, 110, 155.  In May 2005, he applied for Supplemental Security Income benefits alleging an April 2, 2003 onset of disability due to back pain, hand problems, and shoulder pain.  *See, e.g., id.* at 71, 73, 80, 89, 95, 108, 123, 133, 138, 148.

Administrative Law Judge ("ALJ") George W. Reyes found that Plaintiff had

several severe impairments that did not meet a Listing[1] and that he could perform

light work that involved only occasional crawling and handling, fingering, and

feeling.  *Administrative Record* at 16.  With the aid of the testimony from a

vocational expert ("*VE*"), ALJ Reyes identified three jobs Plaintiff can perform –

sales attendant, rental clerk, and officer helper, each of which offered millions of

jobs available nationally though many fewer jobs in the New Mexico area.  ALJ

Reyes accordingly denied benefits, finding Plaintiff not disabled at Step 5, under

the framework of Medical-Vocational Rules 202.14 and 202.21.  *See id.* at 20-21.

Because the Appeals Council denied review on April 25, 2008, the ALJ's

decision is final and the decision under review.  *See, e.g., id.* at 5; *Bowman v. Astrue,*

511 F.3d 1270, 1272 (10th Cir. 2008) ("Because the Appeals Council denied review,

the ALJ's decision is the Commissioner's final decision for purposes of this

appeal.").  Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties

have consented to have me serve as the presiding judge and enter final judgment.

*See Docs. 4, 7.*  The entire record has been meticulously reviewed.  *E.g., Grogan v.*

---

[1]   ALJ Reyes found the severe impairments to be:  degenerative lumbar and thoracic disc disease; a history of right rotator cuff injury; an old fracture of the left hand; inflammatory arthritis of both hands; and venous insufficiency of the lower extremities.   He found that Plaintiff's contact dermatitis on his hands was nonsevere because it cleared within a twelve-month period.  *Administrative Record* at 15.  He discussed Listings 1.02B, 1.04, 4.11, 11.14, and 14.09.  *Id.* at 15-16.

*Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005).  Plaintiff moves to reverse and remand on four grounds, which I address in this order:  (1) the ALJ should have given some weight to the treating physician's opinion; (2) the ALJ erred in his credibility analysis; (3) the VE's testimony conflicted with the Dictionary of Occupational Titles ("*DOT*"), and; (4) the number of jobs available in New Mexico is not "substantial."  *See Doc. 18.*  For the reasons below, I deny the motion.

# I.  Standard of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  "'Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan v. Barnhart,* 399 F.3d 1257, 1261-62 (10th Cir. 2005)).  I can neither reweigh the evidence nor substitute my judgment for that of the agency.  *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *see also Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004).  Thus,

> "The possibility of drawing two inconsistent conclusions
> from the evidence does not prevent an administrative
> agency's findings from being supported by substantial
> evidence." . . .  We may not "displace the agenc[y's]

> choice between two fairly conflicting views, even though
> the court would justifiably have made a different choice
> had the matter been before it *de novo.*"

*Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007).

# II.  Analysis

## A.  Dr. Petrakis' Opinion

The medical records show that Plaintiff has been seen regularly by Indian Health Service ("IHS") providers for his complaints of back pain and other conditions.  Dr. Steve Petrakis was one of Plaintiff's doctors from the late 1990's to 2004, and he treated Plaintiff's chronic back pain with narcotics and injections. *See, e.g., Record* at 207.  In October 2004, Plaintiff asked for an "MD statement to verify dx chronic LB spasming," *id.* at 217, and Dr. Petrakis complied.  He wrote on "Department Of Health & Human Services" memorandum letterhead, *id.* at 216, that Plaintiff "is a long time patient here at Albuquerque IHS . . . followed for several chronic conditions – *all of which interfere with his ability to work* . . . chronic low back pains with spasm; inflammatory arthritis of his hands of uncertain diagnosis; chronic dermatitis with persistent infection."  *Id.* (emphasis added).  ALJ Reyes considered this opinion but gave it

> *no significant weight* because it is brief, conclusory, and
> unsupported by objective medical findings.  In addition,

4

> Dr. Petrakis' opinion is entitled to *little weight* because
> the claimant's testimony shows that he last saw Dr.
> Petrakis in March of 2004.  Thus Dr. Petrakis has not
> treated the claimant during most of the time period since
> his alleged onset of April 1, 2003.

*Id.* at 17-18 (emphasis added).

I do not agree that ALJ Reyes' treatment of Dr. Petrakis' letter is grounds for reversal.  Foremost, I agree with the Commissioner that Dr. Petrakis did not provide a "medical opinion" for consideration under the treating physician rule. The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect *judgments about the nature and severity* of your impairment(s), including your symptoms, diagnosis and prognosis, *what you can still do* despite impairment(s), and your physical or mental *restrictions.*"  20 C.F.R. § 404.1527(a)(2)  (emphasis added); *see also* 20 C.F.R. § 416.927(a)(2) (same).

Dr. Petrakis' letter said the conditions "interfere" with Plaintiff's ability to work, but this conclusory statement says nothing about "nature and severity," what Plaintiff could "still do," and any "restrictions" concerning what he should not do. Decisions from the Tenth Circuit and this district are clear – the treating physician rule does not come into play unless a "medical opinion," as defined above, is rendered.

> A treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. *See id.* §§ 404.1527(a)(2), 416.927(a)(2).  The Secretary will give controlling weight *to that type of opinion* if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.

*Castellano v. Secretary of Health and Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994) (emphasis added); *see also, e.g., Cowan v. Astrue,* 552 F.3d 1182, 1189 (10th Cir. 2008) ("Dr. Gietzen's brief statement on the medical form was not a true medical opinion.  It did not contain Dr. Gietzen's judgment about the nature and severity of Mr. Cowan's physical limitations, or any information about what activities Mr. Cowan could still perform."); *Taylor v. Astrue,* 266 Fed. App'x. 771, 777 (10th Cir. 2008) ("we conclude that the ALJ relied on sufficient evidence in rejecting Dr. Harris's opinion concerning Ms. Taylor's *functional limitations*") (emphasis added); *Balthrop v. Barnhart,* 116 Fed. App'x 929, 932 (10th Cir. 2004) ("Doctor Smedlund's opinion does not address any particular functional limitations associated with Plaintiff's condition.  There are no findings of any substance relating to such relevant capacities as the ability to sit, stand, walk, lift, and carry. . . .  As the ALJ's comment indicates, the statement in question was not a "medical opinion"); *Gonzalez v. Barnhart,* CIV 04-387 WPL (Doc. 20 at 3:  "The treating

physician rule only applies to "medical opinions." *See* 20 C.F.R. § 404.1527(a)(2),

(d). . . .  A patient's subjective complaints are not transformed into "medical

opinions" merely by virtue of being incorporated into a doctor's report.  *See, e.g.,*

*Craig v. Chater,* 76 F.3d 585, 590 & n.2 (4th Cir. 1996)."). [2]

 Nevertheless, I will assume for the sake of argument that Dr. Petrakis'

statement qualifies as a "medical opinion" subject to "treating physician rule"

treatment because the word "interfere" seems to suggest "functional

consequences."  *See Doc. 20* at 2.  Several Tenth Circuit opinions issued after the

one cited by Plaintiff explain and apply the "treating physician rule."  *E.g., Pisciotta*

*v. Astrue,* 500 F.3d 1074, 1077-78 (10th Cir. 2007); *Hackett v. Barnhart,* 395 F.3d

1168, 1173-74 (10th Cir. 2005); *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir.

2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *Watkins v.*

*Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003); *see also Taylor,* 266 Fed. App'x at

---

[2]  ALJ Reyes gave "little weight," *Record* at 18, to a "To Whom It May Concern" letter written by Dr. Lyman S. Atchley, asking that Plaintiff be excused from jury duty due to "his current spinal condition," *id.* at 256.  ALJ Reyes also gave "little weight" to the letter because it "is brief and conclusory and provides little on the way of objective medical findings *or specific functional limitations.*"  *Id.* at 18 (emphasis added).  ALJ Reyes therefore appears to appreciate the distinction between a "medical opinion" subject to the treating physician rule, and statements that are not medical opinions.  As such, his failure to note that Dr. Petrakis' "brief and conclusory" statement also did not mention "specific functional limitations" appears to be a function of poor drafting.  That he also went on to apply the treating physician rule to both "opinions," suggests to me that he engaged in an alternative analysis for the sake of completeness, without specifying that is what he was doing.

776-78 (citing the foregoing cases except for *Langley*); *Doc. 18* at 9 (citing *Watkins*).

"When evaluating the opinion of a treating physician, the ALJ must follow a sequential analysis.  In the first step of this analysis, he should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *Pisciotta*, 500 F.3d at 1077.  "If the answer to both these questions is 'yes,' [the ALJ] must give the opinion controlling weight."  *Id.*  If the answer to either question is "no," then "the inquiry at this stage is complete" and the treating physician's opinion "is not entitled to controlling weight."  *Hackett*, 395 F.3d at 1174; see also *Watkins*, 350 F.3d at 1300 (same, citing *Social Security Ruling 96-2p*, 1996 WL 374188 at * 2).  But even if the opinion is not entitled to controlling weight, the ALJ must go on to the second step and

> consider whether the opinion should be rejected
> altogether or assigned some lesser weight [considering
> the] relevant factors are set forth in 20 C.F.R. §§
> 404.1527 and 416.927 [which] include:  (1) the length of
> the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment
> relationship, including the treatment provided and the
> kind of examination or testing performed; (3) the degree
> to which the physician's opinion is supported by relevant
> evidence; (4) consistency between the opinion and the
> record as a whole; (5) whether or not the physician is a
> specialist in the area upon which an opinion is rendered;
> and (6) other factors brought to the ALJ's attention

which tend to support or contradict the opinion.

*Pisciotta,* 500 F.3d at 1077-78; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Plaintiff does not argue that Dr. Petrakis' statement is entitled to controlling weight. *See Docs. 18, 20.* Indeed, that argument would underscore why Dr. Petrakis' statement is not a qualifying "medical opinion." If the fact that Plaintiff's "ability to work" is "interfere[d] with" were given controlling weight, the only thing it establishes is that Plaintiff suffers from unspecified limits in functioning because of medical conditions. The statement adds nothing of substance to the issue of Plaintiff's residual capacity.

Plaintiff instead asserts that while the ALJ "need not consider each of the six *Watkins* factors in a formulaic manner, he must present sufficient reasoning [and here] the ALJ's reasons have been discredited." *Doc. 18* at 10.[3] Plaintiff first argues that Dr. Petrakis treated him after March 2004 and, thus, one of the reasons ALJ Reyes cited is "simply wrong." *Doc. 18* at 7; *see also id.* at 9 ("the ALJ's finding is contrary to substantial evidence because the above records show that Dr.

---

[3] Plaintiff concludes that the ALJ "should have afforded Dr. Petrakis' opinion *some* weight, and the failure to do so was contrary to law." *Id.* at 10 (emphasis added). But, by giving the statement "little" and "not significant" weight, I consider this to be giving the statement "some" weight. *See Merriam Webster Online Dictionary* ("some . . . 1: being an unknown, undetermined, or unspecified unit or thing . . . being one, a part, or an unspecified number of something (as a class or group) named or implied").

Petrakis treated Mr. Raymond from . . . October 2003 through October 2004, not merely through March 2004, as the ALJ found.").  In support of the argument here, Plaintiff cites two doctor visits – one in July 2004 where Dr. Petrakis "found back spasm present" and in October 2004 where Dr. Petrakis "noted" "chronic low back pain and spasms" from medical records that were admitted at the hearing.  *Id.* at 8 (citing Record at 217, 219-20).

   I first note that, in citing the March 2004 date, the ALJ relied on the testimony by Plaintiff at the hearing and the representations by Plaintiff's attorney at the hearing about what the medical records showed.  *See Record* at 34, 58-59. From the face of the documents Plaintiff cites, there was no reason for the ALJ to disbelieve the testimony and representation.  It is impossible to tell from these documents whether Dr. Petrakis was the treating physician.  One set of records contains no indication which doctor actually treated Plaintiff and the other has an illegible abbreviation in the provider's signature block.  *See id.* at 217, 219-20.[4]

---

   [4]  In fact, as Plaintiff acknowledges, *see Doc. 18* at 8 & n.8, he was seen at different "Indian Health Services" facilities throughout New Mexico, such as the "Albuquerque Indian Hospital," *e.g., Record* at 2, 226; "Albuquerque Indian Health Center," *e.g., id.* at 209, 214; "IHS Santa Fe," *e.g., id.* at 2, 168-78; and IHS ACL Hospital" in San Fidel, *e.g., id.* at 2, 191-206.  The record does not establish where Dr. Petrakis worked.  Moreover, the different facilities appear to use the same forms, and the medical records do not always include the name of the facility, the name of the caregiver, or a signature.  Thus, it is impossible to tell from the majority of records whether Plaintiff was seen by doctors or other health care employees.  *Compare, e.g., id.* at 192, *with e.g., id.* at 214.

Thus, it is not clear from the Record that the ALJ's conclusion is "wrong."

I also note that this difference of some seven months is of little import because the significant date for the ALJ's analysis post-dated March and October 2004. The ALJ did not use Plaintiff's alleged onset of April 2003, and instead focused on May 18, 2005 – the date the application was filed and the date after which there was no substantial gainful activity. That conclusion is not challenged here. *See Record* at 13 ("After careful consideration of all the evidence, I conclude that the claimant has not been under a disability . . . since May 18, 2005, the date the application was filed."); *id.* at 15 ("The claimant has not engaged in substantial gainful activity since May 18, 2005, the application date"); *id.* at 22 ("The claimant has not been under a disability . . . since May 18, 2005, the date the application was filed").

Plaintiff next argues that the ALJ erred in reasoning that Dr. Petrakis' statement was "unsupported by objective medical findings" because "staff" from the Indian Health Services saw Plaintiff for "at least a year" and those medical record show: (1) complaints of back pain, ankle pain, shoulder pain, and aching knuckles; (2) medical observations or assessments of stiff movement, myofacial pain, and back spasms; and (3) administration of trigger point injections. *See Doc. 18* at 7-9. None of the records cited by Plaintiff, however, assess any limitations or provide

11

any information about the extent of Plaintiff's capabilities.  And, none of the

medical records in the Record, spanning from May 1998 to March 2008, impose

any limitations on work.  A March 22, 2004 record notes that he complained of

back pain "after digging ditches."  *Id.* at 8; *see also Record* at 223 ("Has been

dragging ditches.  Back aches.  Would like some TP shots.").

This Court cannot decide that the particular weight the ALJ assigned to Dr.

Petrakis' statement should have been something different.  *See, e.g. Oldham v.*

*Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007) ("[w]e may not displace the agency's

choice between two fairly conflicting views, even though the court would justifiably

have made a different choice had the matter been before it *de novo*") (internal

quotations and citation omitted).  Here, the ALJ's decision was

> "sufficiently specific to make clear to [us] the weight [he]
> gave to [Dr. Harris's] medical opinion and the reasons for
> that weight."  *Oldham,* 509 F.3d at 1258 (quotation
> omitted).  Moreover, we are satisfied that the ALJ relied
> on the relevant factors even if he did not specifically
> discuss them.  *See* [*Pisciotta,* 500 F.3d at 1080]
> (explaining that explicit discussion of all the §
> 404.1527(d) factors is not a prerequisite to meaningful
> review).  In short, this case is not like those cited by Ms.
> Taylor, involving a wholesale failure on the part of the
> ALJ to give any reasons for his decision.  *Cf. Hamlin,* 365
> F.3d at 1217 (noting that ALJ "failed to provide any
> sufficiently specific reasons as to why he was rejecting
> [treating physician's] opinion"); *Watkins v. Barnhart,* 350
> F.3d 1297, 1300 (10th Cir. 2003) (remanding where ALJ

'offered no explanation for the weight, if any, he gave to
the opinion of [claimant's] treating physician').

*Taylor,* 266 Fed. App'x. at 777.

## B.  Credibility

No consulting physician examined Plaintiff, nor is there any treating

physician that executed a Residual Functional Capacity (Physical) form or

mentioned any functional limitations.  There is no allegation that a consulting

examination should have been performed or a treating doctor should have been

recontacted.   Based on Plaintiff's medical records and submissions, nonexamining

agency physicians were of the opinion that Plaintiff can perform light work, with

occasional crawling and limited handling/fingering/feeling.  *See Record* at 179-86.

At the ALJ hearing, among other things, Plaintiff testified that he does not

sleep well because he is being weaned off of the "opiates" he has been prescribed for

many years for his back pain; he must lay down twice daily for twenty minutes to

release back spasms and relax his muscles; the tingling in his hands makes him drop

things more easily; and, though he drives a motorcycle, he must stop every fifty

miles and rest for fifteen minutes.  *See id.* at 16, 19, 44-52, 193, 207.  The

vocational expert testified that if Plaintiff could only handle/finger/feel half of the

time she contemplated, it would eliminate "all" of the jobs she had identified.  *Id.* at

13

69.  She also testified that if Plaintiff needed to lie down whenever he needed to for fifteen to thirty minutes, he could "not maintain employment."  *Id.*

Here, there is no dispute that in assessing whether Plaintiff suffers from disabling pain, ALJ Reyes cited the proper framework and factors to consider.  *See id.* at 16-17; *see also, e.g., Branum v. Barnhart,* 385 F.3d 1268, 1273-74 (10th Cir. 2004).  In general, "the record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996).  ALJ Reyes found Plaintiff's allegations "not entirely credible," *id.* at 17, and adopted the agency physicians' residual functional capacity assessment as his own.  His credibility decision appears in the Step 4 residual functional capacity analysis, which begins:

> After a *careful consideration of the entire record,* I find that as set forth in my hypothetical question to the vocational expert, the claimant has the residual functional capacity to perform light work except that he can perform only occasional crawling and is limited to occupations requiring only occasional handling, fingering, and feeling.

*Id.* at 16 (original emphasis deleted and emphasis supplied).   Unless the record demonstrates otherwise, the federal courts in this circuit will take an ALJ at his or her word when the ALJ states that all of the evidence was considered.  *See Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005) (Appeals Council declaration);

14

*Flaherty v. Astrue,* 515 F.3d 1067, 1071 (10th Cir. 2007) (ALJ declaration).

ALJ Reyes' decision also is not in the least cursory, and it demonstrates that he considered all of the evidence.  For example, he details Plaintiff's allegations of limitations, considers and discusses the reasons why he gave Dr. Petrakis' statement little weight, and he specifically noted and discussed what the medical records have shown from March 2004 to June 2007.  *Record* at 17-19.  And, as demonstrated below, his reasoning is set forth in detail.

Plaintiff maintains that ALJ Reyes' credibility analysis is insufficient because he relied solely on Plaintiff's ability to perform a few limited daily activities (some of which Plaintiff qualified that he cannot perform fully) and the fact that Plaintiff drives a motorcycle, without discussing "levels of medication and whether they were effective and the frequency of Mr. Raymond's medical contacts."  *Id.* at 13; *see also id.* at 14.  I disagree that a remand is required.

Taken in context, ALJ Reyes did in fact discuss medication levels and medical contacts and did not exclusively rely on daily activities.  After discussing the recent medical records, he stated:

> I have also considered other factors, including the claimant's medical treatment and his daily activities . . . A consideration of these additional factors does not change my conclusion that the claimant can perform a limited range of light work . . .

The claimant testified that he was taken off of stronger pain medication (i.e., Percocet) and was put on Celebrex. However, he testified that sometimes Celebrex does not help his pain.  He uses a brace two or three times per week.  He last saw Dr. Petrakis in March 2004 (sic) [October].  He currently is treated by First Choice Community Healthcare and sees a chiropractor.  He testified that he does not have enough money to go to the chiropractor very often.  He has also attended physical therapy but stated that he did not think that physical therapy was helpful . . . .

The claimant has been able to ride a motorcycle, even in winter.  He testified that he drove a motorcycle 10 minutes ago; he was on it for 15 minutes to get to the hearing.  He can ride a motorcycle up to 50 miles without stopping.  He is able to ride his motorcycle from Albuquerque to the Acoma Laguna Hospital [as noted on the a medical record] (Exhibit 5-F, p. 3).  He also testified that he cooks and uses the microwave on an average day.  In addition, he washes dishes, makes the bed, and sweeps the kitchen and vacuums his 55 by 15 foot trailer once per week.

Therefore, the claimant can perform a limited range of light work as set forth in my hypothetical question to the vocational expert.  Although there is evidence of degenerative thoracic and lumbar disc disease, there is no evidence of any spinal stenosis or neurological dysfunction.  Although Dr. Petrakis was of the opinion that the claimant's medical conditions interfered with his ability to work, the claimant had not seen Dr. Petrakis since March 2004.  Although there is evidence of an old fracture in his left hand, a history of a right rotator cuff tear, and inflammatory arthritis in his hands, there in no evidence that these impairments, alone or in combination, would preclude occasional handling,

16

> fingering, and feeling.  Finally, the claimant is able to
> engage in a wide range of household chores and can ride
> a motorcycle.

*Id.* at 19.

Furthermore, while the Tenth Circuit requires an "objectively reasonable explanation over mere intuition, [it does] not reduce[] credibility evaluations to formulaic expressions" and it "'does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.'"  *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)).[5]

It is true that Tenth Circuit opinions do hold that limited daily activities alone do not constitute substantial evidence that a claimant does not suffer from disabling pain or can work.  *E.g., Hamlin v. Barnhart,* 365 F.3d 1208, 1221 (10th Cir. 2004); *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987); *Miller v. Chater,* 99 F.3d 972, 976-78 (10th Cir. 1996).  That is not the case here.  In contrast, when an ALJ

---

[5]  *See also Griner v. Astrue,* 281 Fed. App'x 797, 801-802 (10th Cir. 2008) (same); *Sandoval v. Barnhart,* 209 Fed. App'x 820, 823-24 (10th Cir. 2006) ("Admittedly, the ALJ did not specifically mention Ms. Sandoval's pain medications, the single epidural steroid injection she received in her lower back, or describe each and every medical contact.  He did, however, state that in addition to her testimony, he considered 'all of the evidence of record' and 'the evidence, as a whole.' . . .  '[O]ur general practice ... is to take a lower tribunal at its word when it declares that it has considered a matter.'").

engages in the sort of analysis above, the fact that daily activities are part of the

ALJ's reasoning does not require a remand.[6]

## C.  Vocational Expert Testimony
## &
## National vs. Regional Jobs

ALJ Reyes' hypothetical to the VE included an individual "limited to

occupations in which he can only occasionally engage in the handling, fingering

and feeling movements."  *Record* at 68.  The VE identified sales attendant, rental

clerk, and office helper, with the corresponding DOT codes as 299.677-010,

295.357-018, and 239.567-010, respectively.  *Id.*  In answer to counsel's follow-up

questions, the VE clarified that "occasionally" means "up to 1/3 of the time," and

---

[6]  *E.g., Brescia v. Astrue,* 287 Fed. App'x 626, 630 (10th Cir. 2008) ("Ms. Brescia also
challenges the ALJ's evaluation of her credibility.  She contends that the ALJ's evaluation was
not linked to substantial evidence in the record and that the ALJ did not specifically address her
allegations, instead 'engag[ing] in a wholesale rejection of all of her testimony based on an
assertion that her daily activities were inconsistent with a disabled individual.' . . . The ALJ
sufficiently explained the link between the evidence and his determination that Ms. Brescia's
testimony was not entirely credible.  After thoroughly reviewing Ms. Brescia's medi[c]al history,
he explained that the medical evidence, her own description of her activities, and the fact that
she quit her last job because of transportation issues, not disability, simply were incompatible
with her claim that she is not able to perform any work.  Having carefully reviewed the record,
we see no basis to reverse the ALJ's adverse credibility determination."); *Hunter v. Barnhart,* 210
Fed. App'x 753, 758 (10th Cir. 2006) ("the ALJ cited Ms. Hunter's testimony describing her daily
activities, which included performing household chores, preparing her own meals, minimal
driving, and attending church on Sunday, and he concluded that these activities were
"consistent with the performance of light work."  . . . Further, the ALJ noted that none of Ms.
Hunter's physicians had placed "any functional restrictions on her activities that would preclude
light work activity." . . . Based on the record as a whole, we are satisfied that the ALJ's credibility
findings are closely and affirmatively linked to substantial evidence.").

that if a claimant was only able to engage in those skills "1/6 of the time . . . it

would eliminate all jobs.  All the three that I gave."  *Id.* at 69.

In an April 2007 post-hearing letter to the ALJ, Plaintiff's counsel argued

that:

> The sales attendant requires frequent handling and the
> office helper requires frequent handling and fingering.
> Therefore neither occupation is available.  Rental clerk is
> left with only 385 jobs in the region.  Attached is a copy
> of *Chavez v. Apfel,* Civ. No. 94-381 M/WWD [Order filed
> May 26, 2000], which holds that 413 statewide jobs is not
> significant.  *See also, Allen v. Barnhart,* 357 F.3d 1140
> (10th Cir. 2004) . . . which holds 650-900 statewide jobs is
> in the gray area and therefore the *Trimiar* factors must be
> applied to determine whether the number is significant.

*Record* at 156.  ALJ Reyes rejected both the "conflict" and the "sufficient numbers"

arguments, stating:

> The vocational expert testified that the above jobs would
> be precluded if his handling, fingering and feeling jobs
> were reduced to one-sixth of an eight-hour workday . . . .
> However, I do not use the vocational experts's response
> to [counsel's] questions with these additional limitations
> as the basis for my decision, since these limitations were
> not supported by the record as a whole.
>
> I have also considered the argument by claimant's
> attorney has provided absolutely no evidence to support
> this argument.  Ms. Bowman testified that the above jobs
> could be performed by an individual limited to occasional
> handling and fingering.  She also testified that her
> testimony is consistent with the information provided in

the Dictionary of Occupational Titles.  Therefore, I rely on her testimony at (sic) the basis for my decision.

The claimant also argues that the 385 Rental Clerk jobs in the region is not a sufficient number of jobs to satisfy the Commissioner's burden of proof (Exhibit 12-E).  Even if I were [to] concede that 385 jobs in the region was not sufficient, I emphasize that 20 CFR 416.966(a) provides that "we consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.  It does not matter if work exists in the immediate area in which you live. . . . ."  The claimant apparently does not dispute that 1,034,000 Rental Clerk jobs in the national economy is a sufficient number of jobs.  Therefore, the vocational expert's testimony establishes that there are a significant number of Rental Clerk jobs in the national economy.  Hence, the Commissioner's burden of proof is satisfied.

*Record* at 21.

Plaintiff again argues that the two positions require "frequent" handling, and attached the relevant DOT sections.  Indeed, it appears so.  Handling, fingering, and feeling are not considered to be the same function, and are listed separately on the DOT descriptions.  The sales attendant position states that "handling" is required "Frequently – Exists from 1/3 to 2/3 of the time."  *Doc. 18-2* at 4.  The office helper position provides the same for handling as well as fingering.  *See Doc. 18-3* at 3.  It thus appears that the ALJ erred in not even consulting the DOT sections and reconciling the discrepancy.  *See, e.g., Hackett v. Barnhart*, 475 F.3d

1166, 1171 (10th Cir. 2007); *Haddock v. Apfel,* 196 F.3d 1084, 1091-92 (10th Cir. 1999).  That error does not dictate remand in this instance, however.

The *Chavez* decision was based on testimony that identified only jobs in the regional market and which further had to be reduced for mental impairment that improperly was not taken into account.  *See Record* at 158-65.  Furthermore, after counsel's April 2007 submission, I rejected a similar argument by counsel and distinguished the situation, as here, where there is testimony in the tens of thousands about jobs in the national economy.  That decision was not appealed. *See Montoya v. Astrue,* CIV 08-299 KBM/LFG (Doc. 21 at 7-9).  Thus, even if I were to eliminate the sales attendant and office helper positions, the VE testified that there are "1.34 million jobs in the national economy."  *Record* at 68.  This exceeds the 1,215,000 national jobs that I found sufficient in *Montoya* and the 152,000 national jobs the Tenth Circuit found sufficient in *Stokes.  See Montoya v. Astrue,* CIV 08-299 KBM/LFG (Doc. 21 at 8); *Stokes v. Astrue,* 274 Fed. App'x 675, 684 (10th Cir. 2008); *see also Segovia v. Astrue,* 226 Fed. App'x 801, 804 (10th Cir. 2007) (32,350 usher and ticket taker positions was substantial evidence supporting decision that significant numbers existed) Counsel does not argue otherwise.

Wherefore,

IT IS HEREBY ORDERED that Plaintiff's motion to reverse and remand

*(Doc. 18)* be DENIED.  A final order will enter concurrently herewith.


_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.